```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE NORTHERN DISTRICT OF TEXAS

 3                         DALLAS DIVISION

 4
        UNITED STATES OF AMERICA,        )  3:21-cr-435-N-4
 5                    PLAINTIFF,          )
                                         )
 6      vs.                              )  DALLAS, TEXAS
                                         )
 7      IJEOMA OKORO,                    )
                      DEFENDANT.         )  April 11, 2023
 8

 9

10              TRANSCRIPT OF MOTION HEARING

11          BEFORE THE HONORABLE REBECCA RUTHERFORD

12             UNITED STATES MAGISTRATE JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:      MS. MARY F. WALTERS
                             MS. JENNA D. RUDOFF
17                           UNITED STATES ATTORNEY'S OFFICE
                             NORTHERN DISTRICT OF TEXAS
18                           1100 Commerce Street
                             Third Floor
19                           Dallas, Texas 75242
                             mary.walters@usdoj.gov
20                           jenna.rudoff@usdoj.gov
                             (214) 659-8600
21

22

23

24

25
```

```
 1   FOR THE DEFENDANT:          MR. DOYLE RAYMOND BUNCH, III
                                 BURLESON, PATE & GIBSON, LLP
 2                               900 Jackson Street, Suite 330
                                 Dallas, Texas 75202
 3                               tbunch@bp-g.com
                                 (214) 226-6050
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19   COURT REPORTER:            MR. JEFF L. FOSTER, RMR, CRR
                                 United States Court Reporter
20                               1100 Commerce St., Room 1504
                                 Dallas, Texas 75242
21                               jeff_foster@txnd.uscourts.gov
                                 (214) 753-2349
22

23

24          Proceedings reported by mechanical stenography and

25   transcript produced by computer.
```

1          MOTION HEARING -- APRIL 11, 2023

2               P R O C E E D I N G S

3          THE COURT:  I'll just continue to sit here after the

4     guilty plea docket was done, but we'll go on the record and get

5     started if you're ready.

6          MS. WALTERS:  Your Honor, the Government is ready.

7          THE COURT:  All right.  And defense?

8          MR. BUNCH:  Ready, Your Honor.

9          THE COURT:  All right.  Then I'll go ahead and call the

10    case.  This is *United States of America vs. Ijeoma Okoro*, Case

11    3:21-cr-4535-N, Defendant No. 4.  For the Defendant?

12         MR. BUNCH:  Trey Bunch for Ms. Okoro.

13         THE COURT:  Thank you.  And Ms. Okoro is present and in

14    custody.  And for the Government?

15         MS. WALTERS:  Mary Walters and Jenna Rudoff, Your

16    Honor.  Good morning.

17         THE COURT:  Good morning.  Thank you.  All right.

18    Mr. Bunch, you're aware of why we're here today?

19         MR. BUNCH:  Yes, Your Honor.

20         THE COURT:  All right.  The Defendant filed a letter

21    asking the district judge to represent herself and we're prepared

22    to have a hearing.  You have visited with her; is that correct?

23         MR. BUNCH:  I have, Your Honor.

24         THE COURT:  And does she still intend to proceed with

25    the Faretta hearing?

1            MR. BUNCH:  She does, Your Honor.

2            THE COURT:  Very well.  All right.  Ma'am, the Court

3  previously appointed an experienced attorney from our CJA panel

4  as your counsel, and you sent a letter to Judge Godbey stating

5  that you don't want to be represented by him anymore and you're

6  requesting permission to proceed on your own without counsel; is

7  that correct?

8            THE DEFENDANT:  That is correct.

9            THE COURT:  All right.  You have a constitutional right

10 to self-representation.  Waiver of counsel, however, must be

11 knowing and voluntary.  That means the Court has to determine

12 whether you're knowingly, voluntarily and intelligently waiving

13 your right to be represented by counsel and that you're fully

14 aware of the hazards and disadvantages of self-representation.

15           So I need to ask you several questions.  First, how old

16 are you?

17           THE DEFENDANT:  32.

18           THE COURT:  And how far did you go in school?

19           THE DEFENDANT:  I have a Bachelor's in public admin.

20           THE COURT:  And what is your occupational background?

21           THE DEFENDANT:  I'm an I.T. audit consultant.

22           THE COURT:  Have you ever been treated for any mental

23 illness of any kind?

24           THE DEFENDANT:  No, ma'am.

25           THE COURT:  Have you ever studied law?

```
 1                 THE DEFENDANT:  No, ma'am.

 2                 THE COURT:  Do you have any legal training at all?

 3                 THE DEFENDANT:  No, ma'am.

 4                 THE COURT:  Have you ever represented yourself in a

 5      criminal action?

 6                 THE DEFENDANT:  No, ma'am.

 7                 THE COURT:  All right.  Do you understand what you're

 8      charged with?

 9                 THE DEFENDANT:  Yes, ma'am.

10                 THE COURT:  All right.  I believe there is a

11      superseding information and that you are charged with conspiracy

12      to commit wire fraud and conspiracy to launder money instruments;

13      is that correct?

14                 MS. WALTERS:  That is correct, Your Honor.

15                 THE COURT:  Very well.  Do you understand those

16      charges?

17                 THE DEFENDANT:  Yes, ma'am.

18                 THE COURT:  All right.  Ms. Walters, what does the

19      Government estimate is the maximum term of imprisonment that

20      Ms. Okoro could face if she's convicted?

21                 MS. WALTERS:  Your Honor, the maximum term of

22      imprisonment under the current indictment with respect to count

23      one is going to be 20 years.  And with respect to count two,

24      which relates to the money laundering charge, one -- one moment,

25      please.  Let's see.  I believe it is ten years, but let me -- let
```

1    me confirm.

2    THE COURT:  This is -- I didn't mean for this to be a

3    pop quiz, I just want to be sure that Defendant appreciates the

4    extent of the potential penalty.

5    MS. WALTERS:  Yes, Your Honor, of course.  Ten years,

6    Your Honor.  That is correct.

7    THE COURT:  Thank you.  And were you aware of that?

8    THE DEFENDANT:  Yes, ma'am.

9    THE COURT:  All right.  Has anyone tried to coerce you

10   or force you to represent yourself?

11   THE DEFENDANT:  No.

12   THE COURT:  Do you know that your case is currently set

13   for trial on June 5th?

14   THE DEFENDANT:  Yes, ma'am.

15   THE COURT:  And are you prepared to go forward with

16   your trial on that date?

17   THE DEFENDANT:  Yes, ma'am.

18   THE COURT:  You understand that if you're allowed to

19   represent yourself that is not a reason for Judge Godbey to

20   extend the trial date.

21   THE DEFENDANT:  Yes, ma'am.

22   THE COURT:  Do you understand that at trial the

23   Government would present evidence and you would have the right to

24   see, hear and cross-examine the witnesses against you?

25   THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you understand you would also have the

2     right to present evidence yourself?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that at trial you would

5     have the right to use the power of the Court to compel the

6     production of evidence and the attendance of witnesses in your

7     favor?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  At trial you could not be compelled to

10    testify, whether you would testify would be your own decision.

11    Do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Do you understand that you could be found

14    guilty and then face sentencing?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Do you understand that if you represent

17    yourself you're on your own?  The Court can't tell you or advise

18    you on how you should handle pretrial matters or how you should

19    handle anything at trial?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Do you believe that you have a significant

22    understanding of how a trial works?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  And do you know how to present evidence if

25    you choose to do so?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you understand how to make objections to

3   the Government's evidence?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Why is it that you would prefer to

6   represent yourself as opposed to proceeding with appointed

7   counsel?  And I need to warn you not to reveal any confidential

8   communications that you've had with your lawyer.

9          THE DEFENDANT:  Just a communication gap and no one can

10  fight for me more than me.

11         THE COURT:  I know you have filed several motions

12  related to your -- the revocation of your pretrial release.  You

13  understand your attorney had nothing to do with the judge's

14  decision to revoke your pretrial release.

15         THE DEFENDANT:  Yes, ma'am.  I know that.

16         THE COURT:  All right.  Why didn't you ask to represent

17  yourself sooner?

18         THE DEFENDANT:  That's a good question.  I just feel

19  like I will be the best person to represent myself, because I can

20  fight for me more than anyone.  I can put in more attention, all

21  of my time into this -- this case than the lawyer is currently

22  putting in.

23         THE COURT:  All right.  I am compelled to tell you that

24  I think it's very ill advised for a person who hasn't gone to law

25  school to attempt to represent themselves in a criminal trial.

1   And even if you had gone to law school and were licensed to

2   practice there is a saying that has a lot of wisdom behind it

3   that the person who represents themselves or herself has a fool

4   for a client.  I've seen many times where people think they can

5   do it and then they get caught short.  Have you read any books

6   about the law?

7               THE DEFENDANT:  Yes, ma'am.

8               THE COURT:  All right.  What have you done to prepare

9   to represent yourself at trial?

10              THE DEFENDANT:  I'm always in the law library trying to

11  understand the charges that I'm currently in here for.  And the

12  evidence that I got two weeks ago, I'm putting it together to --

13  to pretty much represent myself.

14              But the law library has been -- has actually been very

15  helpful.  Prior to me being in here I actually got a law book,

16  because I was out on pretrial release and I was reading up on the

17  laws just to make sure I understand the laws pertaining to my

18  charges.

19              THE COURT:  And in addition to just the law -- the

20  substantive law pertaining to your charges, do you understand the

21  rules of procedure and evidence?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  All right.  Do you know how to pick a jury?

24              THE DEFENDANT:  Yes, ma'am.

25              THE COURT:  All right.  Can you tell me what that

1  involves?

2          THE DEFENDANT:  It's called a voir dire and I have --

3  you have specific questions to rule out a jury who would be

4  biased or unbiased towards me.  And the Government would be there

5  and I will be there as well and we will have questions where we

6  can actually rule out who would -- who would be a juror.  And

7  there are 12 jurors that would be selected at the end of the day.

8          THE COURT:  All right.  And do you understand the rules

9  of evidence?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Do you understand what kinds of evidence

12  might be excluded?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Can you give me an example?

15          THE DEFENDANT:  I can put in -- the Government can put

16  in motions of what can and cannot be used and would have to --

17  whatever evidence that would be presented at trial have to go

18  through the judge to -- the district judge to approve it before

19  it's presented at the trial.

20          THE COURT:  Well, what about witnesses who are called

21  to testify?  Do you know how to object to any evidence that they

22  might have coming in from the witness stand?

23          THE DEFENDANT:  If the question is not pertaining to

24  the -- what has been asked, you can object to it.  It has to be a

25  very direct question without trying to lead the witness to -- to

1    make a statement.

2            THE COURT:  All right.  And what about -- what about

3    exhibits?  If you wanted to have any -- the jury consider any

4    pieces of paper or documents or things like that?

5            THE DEFENDANT:  I can use the Power Point, but I can --

6    if I use a Power Point, I would also label it as A, B, C and

7    present it to the judge.  And the jury can also have access to

8    see what that -- whatever the exhibit is as well.

9            THE COURT:  And you understand the Government can

10   object to your evidence?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  And the -- and the judge might agree with

13   the Government and exclude that evidence?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  All right.  Is there anything that the

16   Government would like to cover here as well, particularly with

17   respect to these charges or this Defendant?

18           MS. WALTERS:  Yes, Your Honor.  There are two different

19   topics that we think are important to bring to the Court's

20   attention and to the Defendant's attention so there's no

21   ambiguity later on as to where we stand.

22           First, with respect to her motion to go pro se she

23   identified three bases for it in her written motion.  And I want

24   to make certain that there's no ambiguity that two of the three

25   issues on which she predicated the motion don't change if she is

1   pro se.

2          For example, with respect to the motion she mentioned

3   that she was disappointed at her attorney's refusal to continue

4   to pursue revocation of the pretrial detention order.  Whether

5   she is pro se or has an attorney, that issue has been decided and

6   is final.

7          Every attorney she has had, including Mr. Bunch when he

8   first represented her, and Mr. Hayes, who later represented her,

9   represented her not only in keeping her on pretrial release

10  initially, but Mr. Bunch, at Ms. Okoro's direction, filed a

11  motion to modify conditions of pretrial release, which was

12  granted in part and denied in part.

13         Subsequent to that there was a violation noted on

14  January 28th, 2022.  There were multiple motions by both

15  Mr. Bunch and later by Mr. Hayes to continue that hearing while

16  Ms. Okoro was on bond to allow whoever represented her to prepare

17  adequately.  That hearing ultimately occurred on March 5th, 2022.

18  Her pretrial release was revoked.

19         Then again at her instruction she told Mr. Hayes to

20  move to reconsider that decision by Judge Ramirez and he did.  He

21  filed another motion to reconsider, the Court reconsidered it and

22  denied it.

23         This decision relating to pretrial decision -- pretrial

24  revocation and pretrial release is final.  More than a year has

25  passed and even if she were allowed to represent herself and she

1    continued to file motions it would not change the outcome of that

2    decision.  That decision is final through trial.

3         The second issue that I wanted to bring up is related

4    to discovery.  Another basis that she provided in her written

5    motion for wanting to represent herself was her counsel's refusal

6    to give her discovery in jail.  That also cannot change, because

7    there is a protective order in this case that was entered on

8    November -- I just lost my spot -- November 19th, 2021.  It is

9    Docket No. 125.

10         And the reason for the protective order is because

11    discovery was quite voluminous in this case.  So the Government

12    proposed a discovery order, a protective order, to all of the

13    defense counsel and said we can produce discovery to you more

14    quickly and more readily if we do not have to redact all of the

15    personal identifying information and bank account numbers, Social

16    Security numbers throughout discovery.  Defense counsel variously

17    agreed to that and Judge Godbey entered an order.

18         That order specifically says unredacted materials must

19    remain at defense counsel's office where they may be reviewed by

20    defense counsel, his staff and the Defendant, but under no

21    circumstances may the Defendant have a copy of discovery.

22         This is very important, because the -- let's see.  This

23    is very important because if Ms. Okoro represents herself that

24    protective order doesn't change.  She cannot be in custody, in

25    jail with a copy of the materials that the Government has

1    produced.  So she would be in jail, but she would not be able to

2    get a copy of discovery in jail.  That also does not change

3    whether Ms. Okoro is representing herself or has Mr. Bunch

4    representing her.

5              The third reason she addressed was lack of

6    communications with attorneys.  And while I can't speak to the

7    issues relating to their specific communications, what I can

8    say -- and I think it's important -- is that both Mr. Bunch, when

9    he first represented Ms. Okoro, then Mr. Hayes, and subsequently,

10   again, very briefly Mr. Capitaine from Houston, but, again,

11   Mr. Bunch we have had numerous conversations with the defense

12   attorney and sometimes in the presence of Ms. Okoro.

13             Specifically on or about July 13th, 2022 the Government

14   brought Ms. Okoro in and Mr. Hayes to do what we call a reverse

15   proffer where we describe all of the evidence.  We had a Power

16   Point.  It was very lengthy.  We talked about the charges against

17   her, the evidence against her and what kind of sentence she might

18   be looking at under the guidelines.  We also told her we would

19   make her a plea offer.  She was present for that and Mr. Hayes

20   was present for that.

21             We also told her at that point that we had some

22   indications that she had engaged in crimes beyond what is

23   currently charged in the indictment and that if she pleads guilty

24   we stop looking at those additional crimes.  If she chooses not

25   to plead guilty we continue to look at those crimes.

1          She did not plead guilty at that point, her counsel

2    changed, and then when Mr. Bunch was back on the case in 2023

3    Ms. Rudoff and I met with him specifically at the U.S. Attorney's

4    Office on approximately February 21st, 2023 to go over the exact

5    same Power Point.  So he had the same information that we had

6    previously given to a prior attorney.  We also explained the plea

7    offer and we also explained the potential new charges.

8          In fact, we know he has been thinking about it, because

9    following that meeting he has made requests for discovery related

10   to the potential new charges.  And the potential new charges are

11   PPP loan fraud.

12         And so in early 2021 the Government has now learned

13   that she applied for a PPP loan and then post indictment sought

14   forgiveness of that loan.  We anticipate and we -- we anticipate

15   bringing a charge based on that.  The Government has not decided

16   whether -- what statute to charge it under.  We don't know if it

17   would be an additional wire fraud count or whether it would be

18   pursuant to what's called 18 -- the statute is 18 United States

19   Code Section 1014.  That's still under consideration.

20         In the course of looking at the PPP loan fraud we also

21   learned that her mother obtained a PPP loan within days of her

22   having obtained a PPP loan.  So the liability exists as the

23   Government continues to investigate Ms. Okoro that not only she

24   will face a charge, another felony count based on PPP fraud, but

25   her mother may as well.

1          Finally, and this has happened incredibly recently,

2    literally in the last couple of days, as we look at her bank

3    accounts and we told her we were looking at her bank accounts

4    that postdate the indictment period and we see quite a few

5    unusual financial transactions with dozens of cash deposits and

6    wires overseas.  We have now found a new victim as of Monday,

7    two days -- yesterday, who has been interviewed who sent money to

8    an account controlled by Ms. Okoro that ends in 3604 and this was

9    for a -- to rent an apartment in New York.  That apartment was

10   never rented, so that event of money going into Ms. Okoro's

11   account provides yet another basis for additional investigation.

12         I want to be very clear that the Government is willing

13   to allow Ms. Okoro to plead to the plea offer, which is just to

14   count one of the indictment.  We would dismiss count two of the

15   indictment and we would also stop pursuing additional charges

16   based on the PPP fraud and the additional reservation scam.

17         We do not expect that we have learned everything about

18   Ms. Okoro's frauds.  But we have discussed both with Mr. Hayes

19   previously when he was her counsel and now with Mr. Bunch both

20   over the phone and in person everything except for what we

21   learned yesterday, because it is so new.

22         And the Government thinks it's very important to

23   understand that having counsel may assist her in making a

24   decision about her exposure, because every time the Government

25   brings a new count it increases her maximum exposure.  If the

1    Government charges the PPP fraud under 18 United States Code

2    Section 1343 she faces an additional 20 years beyond what she

3    faces today.

4            If the Government charges it under 1014 I believe the

5    statute is shorter and that the term of imprisonment -- oh, no,

6    I'm wrong.  It's greater.  The term of imprisonment is 30 years.

7            So the -- it's important -- it's important to

8    understand that the fraud loss increases the likelihood of a

9    greater sentence.  The United States Sentencing Guidelines

10   control.  And we have given her estimates of what her fraud loss

11   is that we would put in a plea agreement as we have done with

12   every other defendant who has pleaded guilty in these related

13   cases pending before Judge Godbey.

14           The vast majority of defendants have pleaded guilty and

15   they all agree to a loss amount and then Judge Godbey retains the

16   right to sentence them within the statutory -- within the

17   statutory framework.  He may agree with the loss guidelines or

18   disagree.

19           But as we continue to investigate and find more fraud

20   that we can attribute to Ms. Okoro, her sentencing guidelines

21   recommended range of imprisonment increases.  And that can

22   increase if we go to trial all the way through trial and it can

23   increase even after trial as long as the Government discloses

24   what we're looking at as to Ms. Okoro.

25           So there's some significant liability in continuing to

1    go forward with the charges rather than pleading guilty.  And she

2    can make that decision on her own, absolutely.  But I do think it

3    is worth noting that the Government has discussed where we are

4    and where we're going with both this current counsel and with

5    prior counsel both in person and on the phone.

6              Finally, the last thing that I wanted to note was

7    she -- she said earlier in the hearing that she had received

8    discovery two weeks ago.  And I would like to ask what discovery

9    she received, because she should not have any discovery in

10   custody pursuant to the terms of the protective order.

11             If she was shown discovery, that makes sense.  The

12   Government has no objection to defense counsel going to jail,

13   meeting with the client and showing them discovery.  The concern

14   would be if discovery is actually left at a jail.

15             For those reasons the Government thinks it's important

16   that Ms. Okoro visit again with her attorney regarding the bases

17   of the motion and whether that would change without counsel.

18             Let me see if there -- let me check with co-counsel for

19   just a second.

20             (Discussion out of the hearing of the reporter.)

21             MS. WALTERS:  And then the last thing that I will

22   mention, because seeing Ms. Okoro here, the Government has also

23   given her an opportunity to cooperate.  She has not elected to

24   take that opportunity to date.  But we do think, again, that for

25   full disclosure and lack of ambiguity we mentioned that both to

1    current counsel as well as prior counsel.

2            The opportunity to cooperate is important, because if

3    the Defendant is ultimately convicted whether at trial or via a

4    plea agreement and the Court is contemplating what sentence would

5    be appropriate, if the Defendant has cooperated in a significant

6    manner the Government, at the Government's election -- and it's

7    solely at the Government's election -- has the opportunity to

8    file a motion for consideration pursuant to United States

9    Sentencing Guideline 5K1.1.

10           And what we tell the Court under seal if this -- if

11   these facts play out is that the Government has cooperated and,

12   therefore, Judge, you should sentence the Defendant to lower than

13   what would otherwise be applicable via the sentencing guidelines

14   and lower than what you, Judge, are already thinking under 18

15   United States Code Section 3553(a).

16           Thus far I have observed Judge Godbey give guideline

17   sentences to all -- to co-defendants and other defendants in the

18   related cases.  Therefore, a 5K motion could be quite valuable,

19   because it would, first of all, authorize the Court to go

20   below -- well, the Court has the authority to go below the

21   sentencing guidelines.  But the basis for doing it is the

22   recognition of the Government -- of the Defendant's remorse and

23   their willingness to assist the Government in the investigation

24   and prosecution of others.

25           I think I have covered everything that I wanted to put

1    on the record with respect to Ms. Okoro, her meetings with the

2    Government, the Government's production of discovery and

3    discussions about discovery with both -- Mr. -- Mr. Bunch.  We

4    also had the discussions with Mr. Capitaine and prior to that

5    Mr. Hayes.  If the Court has any questions for me, I'm happy to

6    answer them.

7            THE COURT:  Thank you.  I will follow-up.  With respect

8    to your comment earlier about discovery, Ms. Okoro -- or,

9    Mr. Bunch, do you want to --

10            MR. BUNCH:  I'm sorry.

11            THE COURT:  -- clarify the discovery?

12            MR. BUNCH:  Yes, I will.  And I did not -- it's --

13    it's -- it's on me.  I did not intend to -- and I did not

14    disclose any dates of birth, home addresses or Social Security

15    numbers on any document, however, I did send Ms. Okoro her own

16    bank statements that were in discovery.

17            THE DEFENDANT:  So it's just my information, no one

18    else's information.

19            MR. BUNCH:  And I didn't -- and I didn't -- I didn't

20    intend to violate the protective order in doing so.

21            THE COURT:  That doesn't sound like it was the

22    Government's concern.

23            MS. WALTERS:  No, that is not.  Thank you for

24    clarifying.

25            THE COURT:  Okay.  Thank you.  All right.  Mr. Bunch,

1  do you wish to be heard on this matter?

2          MR. BUNCH:  Briefly, Your Honor.  First of all, I do

3  have some -- some disagreement with the facts asserted in

4  Ms. Okoro's pro se motion -- motion to proceed pro se in that she

5  referenced two occasions of visiting with her, but there have

6  been -- December 15th, that was also an occasion I visited with

7  her.  And so I -- I felt the need to say that just to correct

8  that in the record.

9          I do believe Ms. Okoro is -- is mentally competent.  I

10 do believe she's a very intelligent person.  I have expressed

11 with her the concerns that the Court -- similar concerns that the

12 Court expressed to her about having sufficient background

13 knowledge in evidence and procedure.  Even if she understands

14 fully the statute that she's going to trial under that she's

15 under indictment for, still some concerns regarding just general

16 procedure and evidence law in navigating a trial.

17         So I have expressed that to her, but she's -- she's

18 very persistent in her desire to proceed under this -- under a

19 pro se representation.  I have encouraged her not to.  I'm

20 willing to assist her further on to trial or on to negotiation

21 for a plea agreement.  So that's -- that's really all I have to

22 add for the Court on this matter.

23         THE COURT:  Thank you.  All right.  Ms. Okoro, some of

24 this information that was shared, particularly from the

25 Government, was not apparent from the records, so some of it is

1    new to me and I don't know if it is new information to you as

2    well.  But I'm happy to give you additional time to consider your

3    decision about whether to proceed pro se if you would like time

4    to reflect on that given some of the information that the

5    Government has shared here in court today.

6            THE DEFENDANT:  I'm aware of the information that the

7    Government shared.  It's not new information.  But as far as

8    having access to discovery -- because all I have is just my

9    information.  There's no one's information that I have, it's just

10   it's my account statement.  But in order for me to properly

11   represent myself I would have to -- to see the full discovery as

12   far as relating to me in this case, and the only one person that

13   I know as the co-defendant -- and I believe I have put in -- huh?

14            (Discussion out of the hearing of the reporter.)

15            THE DEFENDANT:  Okay.  I believe I have put in a motion

16   for a temporary -- temporary release while I fight this case on

17   my own and I represent myself so I can have access to all the

18   material, which I wouldn't be able to do if I'm incarcerated.

19   But I am aware of all the information that the Government had --

20   had shared today.

21            THE COURT:  All right.  And I do want to underscore

22   what counsel for the Government told you, that the -- any

23   motion -- the decision about your custody status and your ability

24   to obtain release prior to trial, that decision has been

25   considered and reconsidered and is not going to change just

1  because you are representing yourself.  That's not going to be a

2  way to work around getting out of custody.  Do you understand

3  that?

4              THE DEFENDANT:  I understand that, but I thought

5  legally that the district judge can overrule the magistrate's

6  decision.

7              THE COURT:  He can, but I think to the extent that you

8  think this is a workaround, that if you're representing yourself

9  that's the way you're going to get out, that's not going to be

10 the reason that Judge Godbey reconsiders this.  He's still going

11 to consider everything that's in the record.  He's very unlikely

12 to come to a different decision.

13             THE DEFENDANT:  I'm not trying to do it as a -- as a

14 workaround, Your Honor.

15             THE COURT:  And I want you to understand that this

16 change in circumstance if it happens and you're representing

17 yourself or no longer have an attorney, that is not going to be

18 the reason that he reconsiders and comes to a different decision

19 than Judge Ramirez did.

20             THE DEFENDANT:  I understand that.

21             THE COURT:  And I believe he has already reconsidered

22 Judge Ramirez's or was it just Judge Ramirez who looked at her --

23             THE DEFENDANT:  It was Judge Ramirez.  I went in front

24 of Judge Ramirez on the 3rd of March 2022 and then March 17,

25 2022, so it was both Judge Ramirez.

1          THE COURT:  All right.  And with respect to discovery,

2    just because you're representing yourself, that does not mean

3    that Judge Godbey is going to modify his protective order or

4    allow those unredacted discovery materials to come into the

5    facility where you're being housed.  Do you understand that?

6          THE DEFENDANT:  I understand that.  I was hoping for

7    access to some type of laptop where I can view that information.

8          THE COURT:  That's not going to happen.  You're only

9    going to make your situation worse by getting rid of your lawyer.

10   You're not going to get out and you're not going to get more

11   discovery.  You'll have -- you'll be in the same place with the

12   same information, but you won't have anyone on the outside who is

13   looking at the discovery, who is able to then communicate the

14   information about what he's seeing to you.

15         THE DEFENDANT:  Honestly what is really under discovery

16   is just the account statements since it's fraud.  And I have

17   looked at my account statement.  I need to see the new account

18   statements she's talking about with the $10,000 for rent.  But

19   the majority of the case is just me and the account statement and

20   I have access to that.  That's really -- what the discovery is

21   pertaining to me is my account statement and nothing really much

22   other than the account statements really.  I have -- I would love

23   to see the discovery and have access to it, but the majority of

24   the information is my account statement.

25         THE COURT:  Well, I think that you misunderstand the

1  volume of the Government's evidence and what it is that might be

2  used at trial.

3        THE DEFENDANT:  So based off the Brady law I know I

4  can't have access to it in the detention hearing (sic), but I

5  have access to view that; is that correct?

6        THE COURT:  So the protective order governs what can be

7  given to you while you are in the facility.  They won't be giving

8  you -- I don't know how it will be produced.

9        MS. WALTERS:  Well --

10       THE COURT:  It won't be electronically.

11       MS. WALTERS:  No, and it would never be actually

12  produced to jail.  There are circumstances in which it could be

13  made available at the U.S. Attorney's Office.  And what would

14  happen, then, is Ms. Okoro would be brought in to view something

15  on a laptop with no guidance.  We would put her in a room with

16  agents stationed outside because she would remain in custody and

17  she would be able to look at this, but also not take notes to

18  then take back to prison -- I mean, to her facility, because,

19  again, it would be unredacted materials and you can't take notes

20  on unredacted materials and then return to jail with them.

21       The other thing that I think is important to understand

22  is that the discovery in this case is -- requires production or

23  provision by defense attorneys of 500 megabyte and terabyte hard

24  drives, because there are currently 11 people indicted in the

25  Northern District of Texas as well as more than 20 in the Eastern

1    District of Texas.  And the discovery and the investigations were

2    so overlapping we produced discovery once to avoid -- I shouldn't

3    say once.  We have made one set of discovery to avoid a situation

4    where something got produced in the Eastern and accidentally was

5    not produced in the Northern and so these productions remain

6    rolling.

7             We have made discovery that is not yet available -- in

8    searchable form available to view both at the U.S. Attorney's

9    office and at the FBI in Frisco.  And she could not go to the FBI

10   in Frisco.  She could come to the U.S. Attorney's Office, but,

11   again, she would have to be able to sit down at a laptop on one

12   or two days and then run her own searches, not take any notes and

13   go back to the jail facility.

14            So that is also a limitation.  While you could do it,

15   perhaps the benefit of having an attorney is that he under the

16   protective order can have a copy of the discovery, which is very

17   large and voluminous, and he can search it and ask his questions,

18   which we know he has already done in searching for bank records

19   and other materials.

20            And it's not merely the bank records, the evidence that

21   the Government would introduce at trial would be the entire

22   conspiracy charge to show where Ms. Okoro fits in.  There will

23   also be witness statements that would only be viewable in the

24   U.S. Attorney's Office.  There will be witnesses testifying about

25   how they were defrauded.  There would also be agents testifying.

1          And so it is -- the discovery that a defense attorney

2    may want to look at is going to be, I think, much broader than

3    merely Ms. Okoro's bank statements.

4          THE COURT:  So do you understand the advantage that

5    having an attorney can provide you in this case?

6          THE DEFENDANT:  I understand the advantage.  I didn't

7    understand -- I didn't expect not to have access to this

8    information so I can readily prepare myself.  I know there was a

9    protective order, but I feel like if I'm trying to present myself

10   I should have access to it, especially if I'm confined and I do

11   want to defend myself.

12         Yeah, I feel like I should have access to it if I'm

13   going to defend myself.  Because if I'm taking notes -- if I look

14   at it -- if I come into the U.S. Attorney's Office and look at

15   the evidence and discovery and I can't take notes, I'm not going

16   to able to be able to retain what it is I'm looking at.

17         THE COURT:  But those documents are protected and

18   they're not -- and the information in them is not safe in the

19   facility and it's not safe if you write it down and take it into

20   your facility.  That's why there's the protective order and

21   that's why the Defendants have counsel to assist them.  So by

22   giving up your attorney you're giving up that advantage.

23         You'll be able to look at the materials, but you won't

24   be able to take them with you and you won't be able to take notes

25   on them.  You'll have access, but your attorney, who is not in

Jeff Foster, RMR, CRR    (214) 753-2349

1    custody, and who has tools, would have perhaps greater access.

2            THE DEFENDANT:  Right.

3            THE COURT:  And, again, this is information that you

4    are perhaps appreciating for the first time or hearing the

5    logistics of how this might happen for the first time.

6            So what I'm inclined to do is to take this matter under

7    advisement and to give you a week to consider to do research, to

8    check in the law library at the prison what you have heard from

9    Government's counsel, to also have additional opportunity to

10   visit with Mr. Bunch, and then to let me know in a week whether

11   you want to persist in your motion to represent yourself or if

12   you prefer to withdraw that and to allow Mr. Bunch to stay on as

13   your counsel.

14           THE DEFENDANT:  Okay.  Thank you.  I'd appreciate that.

15           THE COURT:  All right.  As I said, that's what I'm

16   inclined to do and unless -- is there any objection from the

17   Government?

18           MS. WALTERS:  No, Your Honor.

19           THE COURT:  All right.  Mr. Bunch?

20           MR. BUNCH:  No, Your Honor.

21           THE COURT:  All right.  Very well.  Then I'm taking

22   this matter under advisement, and I would request Ms. Okoro since

23   this was your motion that in a week you advise the Court if you

24   want to proceed or if you want to withdraw your motion and let

25   Mr. Bunch stay on as your attorney.

1          THE DEFENDANT:  Thank you so much, ma'am.

2          THE COURT:  All right.  And I will also say, Mr. Bunch,

3   in your communications with Ms. Okoro, if she decides that you --

4   she would like you to stay on as her counsel you're more than

5   welcome to make that representation and file something on the

6   Court since that's probably going to be easier and faster.

7          MR. BUNCH:  Yes, Your Honor.

8          THE COURT:  All right.  Very well.  We'll be adjourned.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX

Court's ruling............................................... 28

1                              CERTIFICATION

2

3        I, Jeff L. Foster, United States Court Reporter for the

4   United States District Court in and for the Northern District of

5   Texas, Dallas Division, hereby certify that the above and

6   foregoing contains a true and correct transcription of the

7   proceedings in the above entitled and numbered cause.

8        WITNESS MY HAND on this 5th day of September, 2023

9

10

11

12                              /s/ Jeff L. Foster
                                JEFF L. FOSTER, RMR, CRR
13                              United States Court Reporter
                                1100 Commerce St., Room 1504
14                              Dallas, Texas 75242
                                (214) 753-2349
15

16

17

18

19

20

21

22

23

24

25